**MEMORANDUM OPINION**

September 6, 2011

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
NORTHERN DIVISION**

In re:

CHARLES B. HICKS                                   Case No. 11-32263
                                                   Chapter 7
                    Debtor

BEFORE THE HONORABLE RICHARD STAIR, JR.

UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:

    FOR THE DEBTOR:

    RAYMOND E. LACY, ESQ.
    ALLEN McDONALD, ESQ.
    249 North Peters Road, Suite 101
    Knoxville, Tennessee 37923

    FOR THE PETITIONING CREDITORS:

    E. BRIAN SELLERS, ESQ.
    Post Office Box 2428
    Knoxville, Tennessee 37901-2428

    FOR BANKEAST:

    KEITH L. EDMISTON, ESQ.
    372 South Washington Street
    Maryville, Tennessee 37804

1        THE COURT:  This matter is before me on the Involuntary Petition filed by

2   First Community Bank of East Tennessee, Community South Bank, National Bank of

3   Tennessee, and First Peoples Bank of Tennessee on May 9, 2011, and joined by

4   BankEast on July 21, 2011.  The Petitioning Creditors seek entry of an order for relief

5   under Chapter 7 of the Bankruptcy Code against Charles B. Hicks pursuant to 11 U.S.C.

6   § 303(h).  Mr. Hicks filed an Answer on May 31, 2011, denying that he is a person

7   against whom an order for relief may be entered, that the Petitioning Creditors were

8   eligible to file the petition because there is a bona fide dispute as to the amounts

9   claimed to be owed to them, and that he is generally not paying his debts as they

10  become due except to the extent the debts are the subject of a bona fide dispute.

11       The trial on the contested Involuntary Petition was held on August 31, 2011.

12  I reserved ruling until this afternoon.  The record before me consists of thirty-eight

13  exhibits, stipulated or otherwise admitted into evidence during the course of the trial,

14  Stipulations of Facts and Documents filed by the parties on August 24, 2011, and the

15  testimony of eight witnesses:  Charles Dotson, an Affiliate Broker with TCI Group;

16  Charles M. Smith, a staff appraiser with Property Service Group; Kenneth R.

17  Woodford, a certified general appraiser; William E. Newman, Senior Vice President

18  with National Bank of Tennessee; Virgil Avans, a Vice President with Community

19  South Bank; Mark Gamble, Chairman and former CEO of First Community Bank of

20  East Tennessee; Tamara Boyer, Special Assets Senior Vice President with BankEast;

21  and the Debtor Charles B. Hicks.

22       The pretrial Order entered on June 23, 2011, defined the issues as follows:

23  (A)  Whether at least three of the Petitioning Creditors, including any additional

24  creditor who timely files a joinder to the Involuntary Petition, hold claims against the

25  Debtor that are not contingent as to liability or the subject of a bona fide dispute as to

liability or amount, if such non-contingent, undisputed claims aggregate at least $14,425.00 more than the value of any lien on property of the Debtor securing such claims; and

(B) Whether, as of the petition date, the Debtor was generally paying his debts as they came due in accordance with 11 U.S.C. § 303(h) unless such debts are the subject of a bona fide dispute as to liability or amount.

Pursuant to the parties' Stipulations, the second issue – whether, as of the May 9, 2011 petition date, Mr. Hicks was generally paying his debts as they came due – was resolved, and it was stipulated that he was not. The parties also stipulated that Mr. Hicks is eligible to be a debtor under Chapter 7 and that the petitioning creditor First Peoples Bank of Tennessee meets the eligibility requirements of § 303(b)(1) in that, as of the petition date, it held at least one non-contingent undisputed claim against Mr. Hicks in the amount of $152,869.80. Accordingly, the only issue still to be resolved is whether the remaining Petitioning Creditors, or any two of them – First Community Bank of East Tennessee, Community South Bank, National Bank of Tennessee, and BankEast – hold claims against Mr. Hicks that are not contingent as to liability or the subject of a bona fide dispute as to liability or amount. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

Involuntary petitions are governed by 11 U.S.C. § 303, which, under subsection (b)(1), allows an involuntary case to be commenced against an individual eligible to be a debtor under Chapter 7 or 11 "by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount . . . if such noncontingent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims."

Pursuant to § 303(h), "[i]f the petition is not timely controverted, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed. Otherwise, after trial, the court shall order relief against the debtor in an involuntary case under the chapter under which the petition was filed only if – (1) the debtor is generally not paying such debtor's debts as such debts become due unless such debts are the subject of a bona fide dispute as to liability or amount[.]"

The Bankruptcy Code does not define the term 'bona fide dispute,' but it is generally agreed that "[a] claim is subject to a bona fide dispute 'if there is either a genuine issue of material fact that bears upon the debtor's liability, or a meritorious contention as to the application of law to undisputed facts.'" *Marketing & Creative Solutions, Inc. v. Scripps Howard Broadcasting Co. (In re Marketing & Creative Solutions, Inc.)*, 338 B.R. 300, 305 (B.A.P. 6th Cir. 2006). "Congress has made clear that it 'intended to disqualify a creditor whenever there is any legitimate basis for the debtor not paying the debt, whether that basis is factual or legal.' . . . Importantly, the court need not resolve any genuine issues of fact or law; it [must] only determine that such issues exist." *Riverview Trenton Railroad Co. v. DSC, Limited (In re DSC, Limited)*, 486 F.3d 940, 945 (6th Cir. 2007) (quoting In re Lough, 57 B.R. 993, 997 (Bankr. E.D. Michigan 1986)).

Nevertheless, "[i]n deciding whether the claims of the petitioning creditors are subject to a legitimate dispute of law, a bankruptcy court is not prohibited from addressing the legal merits of the alleged dispute, but may be required to conduct a limited analysis of the legal issues in order to ascertain whether an objective legal basis for the dispute exists[, although a] debtor may not successfully oppose an involuntary petition by merely claiming that a legal dispute exists when in fact the applicable law is well-established and not subject to legitimate dispute. The bankruptcy court is expected

1    to make an inquiry sufficient to determine whether a legitimate question exists about the

2    application of law to the undisputed facts presented[, and] the debtor must have a

3    'legitimate legal or factual basis' to challenge the claim." *Marketing & Creative*

4    *Solutions, Inc.*, 338 B.R. at 305 (quoting *National City Bank v. Troutman Enterprises,*

5    *Inc. (In re Troutman Enterprises, Inc.)*, 253 B.R. 8, 12 (B.A.P. 6th Cir. 2000)).  The

6    Petitioning Creditors have the burden of establishing a prima facie case that no bona

7    fide dispute exists, after which the burden shifts to Mr. Hicks to demonstrate the

8    contrary.  *In re AMC Investors, LLC*, 406 B.R. 478, 484 (Bankr. D. Delaware 2009).

9        Mr. Hicks does not dispute that the Petitioning Creditors are, in fact,

10    creditors as evidenced by his execution of the following documents:

11        (a) With First Community Bank of East Tennessee:  (1) a Promissory Note

12    executed by Mr. Hicks dated July 23, 2009, in the principal amount of $1,340,181.61;

13    (2) a Loan Assumption Agreement with Modification and Extension of the Original

14    Note dated May 17, 2007, whereby Mr. Hicks assumed the indebtedness of Build, LLC

15    in the then-due amount of $1,375,822.97; (3) a Deed of Trust dated March 16, 2006,

16    encumbering real property then owned by Ray D. Williams and Mona Lesa Williams

17    located on Highway 394 in Blountville, Sullivan County, Tennessee, securing the

18    indebtedness of Build, LLC of $1,384,000.00; (4) a Commercial Purchase and Sale

19    Agreement dated April 27, 2007, executed by the Debtor and Build, LLC, evidencing

20    the agreement for the sale of the Sullivan County, Tennessee property to the Debtor for

21    a price of $1,241,663.00; and (5) a Deed  dated May 17, 2007, whereby Build, LLC

22    conveyed the Blountville, Sullivan County, Tennessee property to the Debtor.  These

23    documents were marked as Trial Exhibits 32 through 36.

24        (b)  With Community South Bank:  (1) a Promissory Note dated July 14,

25    2008, in the principal amount of $3,740,500.00 executed by Millertown Development 3,

LLC; (2) a Promissory Note dated December 11, 2009, in the principal amount of $100,000.00 executed by Millertown Development 3, LLC; (3) an Unlimited and Continuing Guaranty dated July 14, 2008, executed by the Debtor Charles B. Hicks guaranteeing payment of the Millertown Development 3, LLC indebtedness; (4) a Deed of Trust dated July 14, 2008, encumbering real property owned by Millertown Development 3, LLC located on Millertown Pike in Knoxville, Knox County, Tennessee, securing the $3,740,000.00 Promissory Note; and (5) a Modification Agreement dated December 31, 2009, modifying the July 14, 2008 Deed of Trust to also secure the $100,000.00 Promissory Note.  These documents were marked as Trial Exhibits 9 through 13.

(c) With National Bank of Tennessee:  (1) a Promissory Note executed by the Debtor dated April 27, 2009, in the principal amount of $1,840,000.00; (2) a Deed of Trust dated April 27, 2007, encumbering real property owned by the Debtor located on Shallowford Road in Chattanooga, Hamilton County, Tennessee, securing the $1,840,000.00 indebtedness; (3) a Promissory Note executed by the Debtor dated January 19, 2007, in the original principal amount of $1,060,000.00; and (4) a Deed of Trust dated January 19, 2007, encumbering real property owned by the Debtor located on Ridgecrest Drive in Dandridge, Jefferson County, Tennessee, securing the $1,060,000.00.  These documents were marked as Trial Exhibits 17, 18, 21, and 22.

(d)  With BankEast:  (1) a Revolving Promissory Note - Secured executed by the Debtor dated August 30, 2007, in the principal amount of $1,091,200.00; (2) a Hypothecation Agreement dated August 30, 2007, executed by Dennis J. Weaver and wife, Jana R. Weaver, agreeing to pledge certain of their real property in Gulf County, Florida as collateral for the Debtor's loan; (3) the Mortgage executed by Dennis J. Weaver and Jana R. Weaver granting BankEast a lien against the Gulf County, Florida

property to secure the Debtor's loan; and (4) numerous modifications of the Revolving Promissory Note - Secured and Modification and Extension Agreements. These documents were marked as Collective Trial Exhibit 50.

There is also no dispute that following default, each of these four Petitioning Creditors exercised their rights and remedies and proceeded with foreclosure actions against the real properties securing the various loans. Accordingly, the Petitioning Creditors are asserting the following claims against Mr. Hicks:

(a) As reflected in Trial Exhibit 39 and supported by the testimony of Mr. Gamble, First Community Bank of East Tennessee asserts a claim in the amount of $550,154.23, representing a $520,791.02 deficiency balance following the foreclosure of the Sullivan County, Tennessee property on February 26, 2010, together with 5.75% interest through February 15, 2011, in the amount of $29,363.21, which continues to accrue at a rate of $83.18178 per diem.

(b) As testified to by Mr. Avans, Community South Bank asserts a claim in the amount of $416,270.40, representing a $395,568.66 deficiency balance following the foreclosure of the Millertown Pike, Knox County, Tennessee property on July 1, 2010, together with interest through May 9, 2011, in the amount of $20,701.74.

(c) As reflected in Trial Exhibits 19 and 23, respectively, and supported and revised by the testimony of Mr. Newman, National Bank of Tennessee asserts two claims: the first, in the amount of $443,964.18, representing a $425,740.41 deficiency balance following the foreclosure of the Hamilton County, Tennessee, Shallowford Road property on March 11, 2010, together with interest through May 9, 2011, in the amount of $18,223.77; and the second, in the amount of $395,578.85 representing a $370,028.36 deficiency balance following the foreclosure of the Jefferson County, Tennessee property on March 11, 2010, together with interest through May 9, 2011, in

1    the amount of $25,550.49.

2            (d) As reflected in Collective Trial Exhibit 50 and supported by the

3    testimony of Ms. Boyer, BankEast asserts a claim in the amount of $1,173,139.12,

4    including interest, fees, and legal costs through May 9, 2011, pursuant to its secured

5    Revolving Promissory Note - Secured and its numerous modifications and extensions.

6            Mr. Hicks disputes the validity of each of these claims. With respect to

7    those claims based upon deficiency balances from the foreclosure sales, Mr. Hicks

8    argues that the foreclosure prices were all grossly inadequate and that no deficiency

9    should remain on any of the debts. With respect to BankEast, Mr. Hicks argues that the

10   Bank entered into a valid and binding agreement with him whereby it agreed that the

11   Debtor could pay $700,000.00 any time on or before September 22, 2011, and the Bank

12   would not pursue any deficiency balance, thus making the asserted claim contingent.

13   After reviewing the exhibits and the record presented, and based upon the testimony of

14   the witnesses, I find, notwithstanding that the claims asserted by First Community Bank

15   of East Tennessee, Community South Bank, and National Bank of Tennessee were, at

16   the time the Involuntary Petition was filed, subject to litigation in state court to collect

17   the respective deficiency balances, that there is no bona fide dispute as to the liability or

18   the amount of the claims they have asserted based on Tennessee law as it existed prior

19   to September 1, 2010.

20           A deficiency judgment "should reflect the difference in the fair market

21   value, if it is greater than the sales price, and the amount still owed." *Lost Mountain*

22   *Development Co. v. King,* 2006 WL 3740791, at *5 (Tenn. Ct. App. Dec. 19, 2006).

23   The principles regarding deficiency judgments following foreclosure in Tennessee as

24   succinctly stated in *Lost Mountain Development Co.* are as follows: "(1) the value of

25   the property sold is not looked into in a deficiency case unless there is a charge of fraud

in the manner of sale or a charge that the sales price was grossly inadequate; (2) in the absence of an allegation of irregularity in the sale, there is a presumption that the price brought at the public sale is the fair market price of the property; and (3) when gross inadequacy is claimed, the burden of overcoming the presumption attached to a sale free of irregularity is on the defendant against whom a deficiency judgment is sought." *Lost Mountain Development Co.,* 2006 WL 3740791, at *5 (citing *Duke v. Daniels*, 660 S.W.2d 793 (Tenn. Ct. App. 1983)). Accordingly, "when a debtor challenges the adequacy of the foreclosure sale price as a defense to an action to collect the difference between the amount owed and the foreclosure proceeds, a court must consider 'the value of the real estate at the time of the foreclosure.'" *Lost Mountain Development Co.,* 2006 WL 3740791, at *5 (quoting *Duke*, 660 S.W.2d at 794.). The value of the property prior or subsequent to the foreclosure sale is not relevant. *Id.* at *5 (quoting *Brown v. Eckhardt*, 129 S.W.2d 1122, 1128 (Tenn. Ct. App.1939)). Unless there is evidence demonstrating irregularity, misconduct, fraud, or unfairness during the foreclosure sale, "Tennessee law accords conclusive effect to the price produced through the foreclosure sale, '[e]ven where the sale price is shockingly disproportionate to the actual value of the Property.'" *Citizens National Bank v. Mountain Ridge*, LLC, 2010 WL 4238479, at *4 (E.D. Tenn. Oct. 21, 2010). Nevertheless, a debtor may offer evidence about the fair market value of the property at the time of the sale "so as to attempt to overcome the presumption and prove that the sale price was grossly inadequate." *Lost Mountain Development Co.*, 2006 WL 3740791, at *5. *GreenBank v. Thompson*, 2010 WL 5549231, at *6 (Tenn. Ct. App. Dec. 29, 2010).

Moreover, in making a determination as to whether a sales price is grossly inadequate, it is irrelevant if a range of appraisal values are received; "the court's task is not to determine the property's value, but instead to 'determine whether the record

1  contains evidence to support Defendants' allegations of gross negligence.'" *Fifth Third*

2  *Bank v. Dial Properties, LLC*, 2011 WL 588148, at *5 (M.D. Tenn. Feb. 10, 2011)

3  (quoting *Cadence Bank, N.A. v. Latting Road Partners, LLC*, 699 F. Supp. 2d 1033,

4  1039-40 (W.D. Tenn. 2010)). "[T]he law indicates that the fact alone that a lender's bid

5  is less than an appraisal value, even less by up to 50%, may not render the bid grossly

6  inadequate – 'less than' is not equated with 'grossly inadequate' in Tennessee law."

7  *Fifth Third Bank* at *6.

8  Pursuant to the loan documents stipulated into evidence through Trial

9  Exhibits 32 through 36 and as evidenced by Trial Exhibit 39, as of February 26, 2010,

10  Mr. Hicks was indebted to First Community Bank of East Tennessee in the amount of

11  $1,397,194.21, which was secured by the Sullivan County, Tennessee property.

12  Following default, the Bank conducted its foreclosure sale on February 26, 2010, at

13  which it credit bid $878,172.00. After adding sale expenses of $1,768.81, it was left

14  with a deficiency balance on that date of $520,791.02. When questioned at trial how

15  the Bank calculated its bid, Mr. Gamble testified that it relied on the December 14,

16  2009 appraisal conducted by David W. Harris, entered into evidence as Trial Exhibit

17  70, which gave a value range: a low range figure of $800,000.00, a mid-range figure of

18  $1,000,000.00, and a high range figure of $1,200,000.00. As reflected on Trial

19  Exhibit 55, the Bank ran an analysis on all three figures, settling upon the mid-range

20  figure of $1,000,000.00, and after deducting taxes and commissions, arrived at its

21  $878,172.48 bid. Based upon the record, the court finds no issue with First Community

22  Bank of East Tennessee's bid, which represents approximately 72% of the outstanding

23  balance owed by Mr. Hicks. It would have been well within the Bank's rights to rely on

24  the low range figure of the appraisal made less than three months before the foreclosure

25  sale; however, it chose the mid-range figure, which was a more than reasonable value.

Furthermore, Mr. Hicks himself acknowledged in his Financial Statement dated February 25, 2011, entered into evidence as Trial Exhibit 6, that he was "responsible for" a $500,000.00 loan balance to this bank following the foreclosure. There is no bona fide dispute as to the deficiency claim asserted by First Community Bank of East Tennessee.

Likewise, the court finds that there is no bona fide dispute as to the deficiency claim asserted by Community South Bank. Pursuant to the loan documents stipulated into evidence through Trial Exhibits 9 through 13, and as evidenced by Trial Exhibit 27, Mr. Hicks was indebted to Community South Bank on two loans, in the original principal amounts of $3,740,500.00 and $100,000.00, respectively, both of which were secured by the Millertown Pike, Knox County, Tennessee property. Following default, the Bank conducted its foreclosure on July 1, 2010, at which it credit bid $3,600,000.00, leaving a deficiency balance on that date of $395,568.66. At trial, Mr. Avans testified that, in calculating its bid, the Bank initially relied on the May 26, 2010 appraisal conducted by Charles M. Smith, which was entered into evidence as Trial Exhibit 58, assigning an "as is" value of $2,924,000.00 to the land. The Bank then took into account the value of engineering work that had been performed on the property, arriving at its bid of $3,600,000.00. Based upon the record, the court finds no issue with Community South Bank's bid, which represents approximately 94% of the outstanding balance owed by Mr. Hicks on the date of foreclosure. Again, the Bank would have been well within its rights to bid the "as is" value given that the appraisal which was made thirty-six days before the foreclosure sale; however, it chose to include the value of the engineering work performed on the property and bid in nearly the amount owed by Mr. Hicks on the debt. That the Bank did not rely on Mr. Smith's "as developed" appraisal value of $5,094,000.00, as reflected in Trial Exhibit 59, is

immaterial because the property was not, in fact, developed and this larger value represented the potential value if the property was subdivided and sold in four separate lots. Furthermore, Mr. Hicks himself acknowledged in his Financial Statement dated February 25, 2011, entered into evidence as Trial Exhibit 6, that he was "responsible for" a $464,000.00 balance to Community South Bank following the foreclosure.

Similarly, I find there is no bona fide dispute as to the claims asserted by National Bank of Tennessee. Pursuant to the loan documents stipulated into evidence through Trial Exhibits 17 and 18 as and as evidenced by Trial Exhibit 19, Mr. Hicks was indebted to National Bank of Tennessee in the amount of $1,947,598.97, including principal, accrued interest, delinquent taxes, recording fees, attorney fees, and other expenses of sale, which was secured by the Hamilton County, Tennessee property. Following default, the Bank conducted its foreclosure on March 11, 2010, at which it credit bid $1,500,000.00, leaving a deficiency balance on that date of $425,740.41, after backing out delinquent taxes of $16,285.56 and recording fees of $5,573.00. When questioned at trial how the Bank calculated its bid, Mr. Newman testified that it relied on the March 10, 2010 appraisal conducted by William C. Haislen, entered into evidence as Trial Exhibit 67, which gave a voluntary sale figure of $1,790,000.00 and a liquidation value of $1,165,000.00. Mr. Newman testified that although the Bank could have gone with the lower amount, it chose a mid-range figure. Based upon the record, the court finds no issue with National Bank of Tennessee's bid, which represents approximately 77% of the outstanding balance owed by Mr. Hicks. Although it could have relied on the lower amount reflected in the appraisal, which was conducted one day prior to the foreclosure sale, the Bank went with a mid-range figure, providing more than reasonable value.

The same is true for National Bank of Tennessee's second claim. Pursuant

to the loan documents stipulated into evidence through Trial Exhibits 21 and 22 and as evidenced by Trial Exhibit 23, Mr. Hicks was indebted to National Bank of Tennessee in the amount of $1,126,254.08, including principal, accrued interest, delinquent taxes, recording fees, attorney fees, and other related expenses of sale, which was secured by the Jefferson County, Tennessee property.  Following default, the Bank conducted its foreclosure sale on March 11, 2010, at which it credit bid $750,000.00, leaving a deficiency balance on that date of $370,028.36, after backing out delinquent taxes of $3,175.72 and recording fees of $2,798.00.  When questioned at trial how the Bank calculated its bid, Mr. Newman testified that it relied on the March 3, 2010 appraisal conducted by Kenneth Woodford, entered into evidence as Trial Exhibit 62, which assigned a gross retail sellout value to the property of $980,000.00 and a discounted, bulk sale value of $750,000.00, and decided to use the bulk sale value reflected in the appraisal which was conducted eight days prior to the foreclosure.  Again, based upon the record, the court finds no issue with National Bank of Tennessee's bid, which represents approximately 67% of the outstanding balance owed by Mr. Hicks and that this price, the credit bid, provided a reasonable value.

Furthermore, Mr. Hicks himself acknowledged in his Financial Statement dated February 25, 2011, entered into evidence as Trial Exhibit 6, that he was "responsible for" a $823,000.00 balance to the Bank following the foreclosures of both properties.

Although contending that the foreclosure bids made by each of the foregoing Banks were "grossly inadequate," Mr. Hicks did not offer any proof other than his own opinion that they should have been higher.  The court disagrees.  The bids ranged in percentage of the debt from 67% to 94%, and each of the Banks' representatives testified that while their respective Banks could have gone lower, each chose to bid in,

at a minimum, the appraisal amounts. The record reflects that not only were the respective Banks not negligent, they were accommodating to Mr. Hicks in making their credit bids. Frankly, the court is impressed with the extent to which these Banks went to ensure the fairness of their credit bids at the various foreclosure sales.

Additionally, I find that there is no bona fide dispute as to the liability or amount of the claim asserted by BankEast, notwithstanding the pendency of a foreclosure proceeding in Florida. Pursuant to the loan documents stipulated into evidence through Collective Trial Exhibit 50, Mr. Hicks was indebted to BankEast in the amount of $1,173,139.12, which was secured by two townhomes and 22 concrete condo pads located in Gulf County, Florida, owned by a third party. Following default, the Bank commenced a judicial foreclosure proceeding in Florida, which remains pending. On February 21, 2011, a Contract for Purchase and Sale was entered into between Waco Development Co., Charles Hicks, Dennis J. Weaver, and Jana R. Weaver as Sellers and Creative Business Consultants Group, LLC as Purchaser, under the terms of which Creative Business Consultants Group, LLC agreed to purchase the collateral securing BankEast's loan for $1,700,000.00. *See* Trial Exhibit 53. Pursuant to this Contract and at the request of Mr. Hicks, BankEast agreed to the following, as set forth in a March 22, 2011 letter to Mr. Hicks from Kenneth Dobbins, President and Chief Operating Officer, and Ms. Boyer: "BankEast affirms that upon receipt of good and adequate funds totaling Seven Hundred Thousand Dollars ($700,000) from the sale of the collateral subject to the BankEast Loan Number 270617 obligation, specifically the 2 residential condo units and 22 residential condo pads located in Port Saint Joe, Florida, BankEast will release said collateral and will not pursue you for repayment of the deficient amount. This affirmation is based upon the representations you made verbally and in your financial statement dated February 25, 2011, and emailed to my

attention on February 28, 2011, and then the same being subsequently signed and emailed to me again on March 22, 2011.  If the referenced Seven Hundred Thousand Dollars ($700,000) is not received by the Bank or its assigns within six (6) months of the date of this letter, this agreement will expire." Trial Exhibit 54.  The sale, however, did not go through, as the earnest money required by the contract was not paid, thus voiding the Contract for Purchase and Sale.  Additionally, as Ms. Boyer testified, GreenBank, the first lienholder on the 22 condo pads, foreclosed its lien.  A tax sale was scheduled for the two townhomes, causing BankEast to redeem the property for approximately $50,000.00.  Although Mr. Hicks has asserted that the March 22, 2011 letter from BankEast was an option, allowing him through September 22, 2011 to pay the Bank $700,000.00, the court disagrees.  The letter expressly states that the Bank would accept $700,000.00 "from the sale of the collateral subject to the BankEast Loan Number 270617 obligation, specifically the 2 residential condo units and 22 residential condo pads located in Port Saint Joe, Florida" upon which BankEast would "release said collateral and will not pursue you for repayment of the deficient amount." Because the earnest money deposit was never paid and a majority of the collateral – the 22 residential condo pads – have been foreclosed and are no longer collateral, the basic terms of the letter could not be performed.  The court agrees that this was not an outstanding offer by BankEast to accept payment of $700,000.00 from any source in exchange for a release and forgiveness of the deficiency, nor was the letter a forbearance agreement whereby BankEast agreed that it would not pursue its remedies allowed under the loan documents marked as Collective Trial Exhibit 50.  Accordingly, I find that the claim asserted by BankEast in the amount of $1,173,139.12 is not contingent or unliquidated as to amount or liability, notwithstanding the pendency of the foreclosure proceeding in Florida, which was initially stayed by the filing of the

1   Involuntary Petition.

2       Having determined that all five Petitioning Creditors hold claims against

3   Mr. Hicks that are not the subject of a bona fide dispute as to liability or amount and

4   aggregate considerably in excess of the statutory amount of $14,425.00, and the parties

5   having stipulated that Mr. Hicks was generally not paying his debts as they became due

6   on the May 9, 2011 petition date, the Involuntary Petition will be sustained and I will,

7   pursuant to 11 U.S.C. § 303(h)(1), enter an Order for relief under Chapter 7 against

8   Mr. Hicks.

9       This Memorandum constitutes findings of fact and conclusions of law as

10  required by Rule 52(a) of the Federal Rules of Civil Procedure, made applicable to this

11  contested Involuntary Petition by Rules 1018 and 7052 of the Federal Rules of

12  Bankruptcy Procedure.  I will not ask the court reporter to transcribe my opinion.  If

13  transcription is requested by any party, a hard copy will be delivered to me for edits.  At

14  such time as the edits and corrections might be made, the Memorandum Opinion will be

15  uploaded.  I will issue an Order for relief this afternoon.

16  FILED:  November 30, 2011

17            /s/ *Richard Stair, Jr.*
          RICHARD STAIR, JR.
18            U.S. BANKRUPTCY JUDGE

19

20

21

22

23

24

25